IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

STERLING L. JENNINGS, et al.,

        Plaintiffs,

v.                                              Action No. 2:17cv427

ROUNDPOINT MORTGAGE
SERVICING CORPORATION, et al.,

        Defendants.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Sterling L. Jennings and Deirdre D. Jennings brought this action alleging several claims arising from defendant RoundPoint Mortgage Servicing Corporation's ("RoundPoint") initiation of foreclosure proceedings and the foreclosure sale of plaintiffs' home. RoundPoint filed a motion to dismiss plaintiffs' claims for breach of contract and for violations of Regulation X of the Real Estate Settlement Procedures Act, 12 C.F.R. Part 1024, asserting these portions of plaintiffs' complaint fail to state a claim for which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 6.

An order of reference assigned this motion to the undersigned. ECF No. 13. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C), Rule 72(b) of the Federal Rules of Civil Procedure, and Local Civil Rule 72, it is hereby recommended that RoundPoint's partial motion to dismiss be GRANTED in part and DENIED in part.

## I.     FACTUAL AND PROCEDURAL HISTORY[1]

Sterling L. Jennings and Deirdre D. Jennings ("plaintiffs") brought this action after their home was foreclosed upon. Compl., ECF No. 1-1 at 9. Plaintiffs seek rescission of the foreclosure sale, a declaratory judgment stating that the foreclosure sale is void and invalid, compensatory damages against RoundPoint in the amount of $50,000.00, and a stay of any unlawful detainer proceedings until the claims in this complaint are resolved. *Id.*

In June 2015, plaintiffs entered into a mortgage loan contract, consisting of a note and a deed of trust, by which RoundPoint financed plaintiffs' purchase of real property located at 408 Quaker Ridge Court, Suffolk, Virginia 23435. Compl. ¶¶ 1, 4–5; *see also* Note, ECF No. 7-1, Deed of Trust, ECF No. 7-2. Plaintiffs fell behind on their payments in September 2016, as a result of an increase in the monthly payment in early 2016, coupled with an injury that caused a reduction in plaintiffs' income. Compl. ¶¶ 6, 8. Plaintiffs "began sending in paperwork to participate in a loan modification review" in February 2017. *Id.* ¶ 10. On February 6, 2017, plaintiffs received a letter from RoundPoint requesting additional information, and the additional documentation was faxed to RoundPoint on March 2, 2017. *Id.* ¶¶ 11–12. On March 6, 2017, plaintiffs received another letter from RoundPoint requesting a subset of the information requested in the February letter, and the documentation was faxed again on April 3, 2017. *Id.* ¶¶ 13–14.

---

[1] "In considering a motion to dismiss, [the Court] accept[s] as true all well-pleaded allegations and view[s] the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The Court cautions, however, that the facts alleged by plaintiffs are recited here for the limited purpose of deciding the partial motion to dismiss. The recited facts are not factual findings upon which the parties may rely for any other issue in this proceeding.

In mid-April, plaintiffs received notice that a foreclosure sale would take place on May 2, 2017. *Id.* ¶ 15. On April 20, 2017, RoundPoint sent plaintiffs a letter acknowledging that they had a complete loan modification package on file. *Id.* ¶ 16. During a telephone conversation on May 1, 2017, RoundPoint explained "that the loan modification review was denied because it was 'too close' to the scheduled foreclosure sale." *Id.* ¶ 18. The substitute trustee, defendant Equity Trustees, LLC, foreclosed on the plaintiffs' property on May 2, 2017. *Id.* ¶¶ 3, 19.

Plaintiffs filed a complaint against defendants RoundPoint and Equity Trustees, LLC, in the Circuit Court for the City of Suffolk on July 11, 2017. ECF No. 1 at 1. RoundPoint removed the case to this Court on August 11, 2017. *Id.* On August 18, 2017, Equity Trustees, LLC, filed an answer and RoundPoint filed a partial motion to dismiss. ECF Nos. 5, 6. Plaintiffs filed an opposition to the partial motion to dismiss on September 14, 2017, and RoundPoint filed a reply on September 19, 2017. ECF Nos. 10, 12.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss complaints, or claims within complaints, upon which no relief can be granted. Fed. R. Civ. P. 12(b)(6); *Sonnier v. Diamond Healthcare Corp.*, 114 F. Supp. 3d 349, 354 (E.D. Va. 2015). In order to survive a motion to dismiss, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This pleading standard requires that the complaint state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In essence, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Ascertaining whether a complaint states a plausible claim for relief is a "context-specific task" that requires the court to

"draw on its judicial experience and common sense." *Id.* at 679.

A motion to dismiss pursuant to Rule 12(b)(6) challenges "the sufficiency of a complaint; it does not resolve disputes over factual issues, the merits of a claim, or the applicability of a defense." *SunTrust Mortg., Inc. v. Simmons First Nat'l Bank*, 861 F. Supp. 2d 733, 735 (E.D. Va. 2012) (citing *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). Therefore, "[i]n ruling on a 12(b)(6) motion, a court 'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). The factual allegations, however, "cannot be mere speculation, and must amount to more than 'a sheer possibility that a defendant has acted unlawfully.'" *Brach v. Conflict Kinetics Corp.*, 221 F. Supp. 3d 743, 747 (E.D. Va. 2016) (quoting *Iqbal*, 556 U.S. at 678). In addition, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

### III. ANALYSIS

In the partial motion to dismiss, RoundPoint seeks a dismissal of plaintiffs' claims for breach of contract, and plaintiffs' claims that RoundPoint violated Regulation X, 12 C.F.R. Part 1024, promulgated under the Real Estate Settlement Procedures Act ("RESPA"). ECF No. 7. RoundPoint argues that each of these claims fails as a matter of law. *Id.*

A.  **Breach of Contract – Duty of Good Faith and Fair Dealing**

In plaintiffs' breach of contract claim, plaintiffs allege RoundPoint "breached their duty of good faith and fair dealing on the Promissory Note." Compl. at 7. Plaintiffs claim the duty of good faith and fair dealing is implicit in every contract, including the note and deed of trust. *Id.* ¶¶ 39–40. Plaintiffs assert RoundPoint failed to acknowledge that plaintiffs' "completed their loan modification application on March 3, 2017," requested duplicate information from plaintiffs, and then waited seven weeks to declare that the application was complete. *Id.* ¶ 37. Plaintiffs allege this "failure to act in good faith gives rise to a cause of action for breach of contract." *Id.* ¶ 38. Plaintiffs further claim RoundPoint "breached the duty of good faith by dual tracking the loan for foreclosure and loss mitigation and by failing to acknowledge that documentation was received timely." *Id.* ¶ 42.

Under Virginia law, to establish a breach of contract, plaintiffs must demonstrate: (1) a legally enforceable obligation of RoundPoint to plaintiffs; (2) RoundPoint's violation or breach of that obligation; and (3) injury or damage to plaintiffs caused by RoundPoint's breach of the obligation. *Sunrise Continuing Care, LLC v. Wright*, 671 S.E.2d 132, 135 (Va. 2009) (citing *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004)). Moreover, contracts governed by Virginia law contain an implied covenant of good faith and fair dealing. *Va. Vermiculite, Ltd. v. W.R. Grace & Co.*, 156 F.3d 535, 541–42 (4th Cir. 1998). This implied duty exists regardless of whether the contracts fall under the Uniform Commercial Code. *See SunTrust Mortg., Inc. v. United Guar. Residential Ins. Co. of N.C.*, 806 F. Supp. 2d 872, 893–95 (E.D. Va. 2011), *vacated on other grounds*, 508 F. App'x 243 (4th Cir. 2013). This duty prohibits the "exercise [of] contractual *discretion* in bad faith," but "does not prevent a party from exercising its explicit contractual *rights*," *Va. Vermiculite, Ltd.*, 156 F.3d at 542, and "cannot be used to override or

5

modify explicit contractual terms." *Riggs Nat'l Bank v. Linch*, 36 F.3d 370, 373 (4th Cir. 1994).

> [T]he implied covenant of good faith and fair dealing is 'simply a recognition of conditions inherent in expressed promises. To that end, the covenant does not compel a party to take affirmative action not otherwise required under the contract, does not establish independent duties not otherwise agreed upon by the parties, and cannot be invoked to undercut a party's express contractual rights.

*Monton v. America's Servicing Co.*, No. 2:11cv678, 2012 WL 3596519, at *7 (E.D. Va. Aug. 20, 2012). Further, "a breach of those duties only gives rise to a breach of contract claim, not a separate cause of action." *Id.* (citing *Bagley v. Wells Fargo Bank, N.A.*, No. 3:12cv617, 2013 WL 350527, at *6 (E.D. Va. Jan. 29, 2013)), *aff'd*, 669 F. App'x 117 (4th Cir. 2016).

RoundPoint asserts that plaintiffs have failed to point to any terms of the note or deed of trust that require RoundPoint to modify plaintiffs' loan, and that no such provisions exist. ECF No. 7 at 5–6 (citing Compl., Note, Deed of Trust). The Court agrees that plaintiffs' breach of contract claim fails due to plaintiffs' failure to identify any contract provision allegedly breached by RoundPoint, including any provision requiring RoundPoint to modify plaintiffs' loan or forego foreclosure if plaintiffs were attempting to modify the loan. Plaintiffs have failed to allege the first element of a breach of contract claim, a legally enforceable obligation of RoundPoint to plaintiffs.[2]

Plaintiffs argue that "a lender must comply with all conditions precedent to foreclosure in a deed of trust even if the borrowers are in arrears." ECF No. 11 at 3 (citing *Bayview Loan Servicing, LLC v. Simmons*, 654 S.E.2d 898 (Va. 2008)). In *Bayview*, however, the issue was

---

[2] RoundPoint further argues that plaintiffs admitted they failed to timely make payments on their loan, which constitutes a material breach of the contract barring plaintiffs from enforcing any contractual rights stemming from the note. ECF No. 7 at 7 (citing Compl. at ¶ 9; *Land & Marine Remediation, Inc. v. BASF Corp.*, No. 2:11cv239, 2012 WL 2415552, at *6 (E.D. Va. June 26, 2012) (citing *Horton v. Horton*, 487 S.E.2d 200, 203 (Va. 1997)). Because plaintiffs have failed to allege the first element necessary to establish a breach of contract, the Court will not address this alternative reason for dismissal.

whether the lender had complied with provisions in the deed of trust requiring notice by certified mail prior to exercising the right of acceleration. *Bayview Loan Servicing, LLC*, 654 S.E.2d at 120–22. Here, plaintiffs have not specified any contractual provision in the note or deed of trust that RoundPoint has allegedly breached.

Also in their opposition, plaintiffs assert the deed of trust states that the document "shall be governed by Federal law and the law of the jurisdiction in which the Property is located."[3] ECF No. 11 at 3. Plaintiffs assert that RoundPoint's failure to comply with 12 C.F.R. Part 1026 (Regulation Z), which establishes a creditor's obligations when dealing with a borrower in arrears, constitutes a breach of contract. *Id.* at 3–4. The Court need not address these assertions, which are not alleged in plaintiffs' complaint.

Plaintiff has failed to state a claim for breach of the duty of good faith and fair dealing by failing to allege a provision in the note or deed of trust establishing a legally enforceable obligation from RoundPoint to plaintiffs that has allegedly been breached. Accordingly, plaintiffs' breach of contract claim should be DISMISSED.

**B.      RESPA Regulation X**

Plaintiffs allege RoundPoint violated RESPA's Regulation X, specifically, sections 1024.38 and 1024.41. Compl. ¶¶ 43–52.

**1.      Section 1024.38**

Plaintiffs assert RoundPoint violated section 1024.38 when it "failed to provide the Plaintiffs with communication regarding the status of their loan modification application submitted in March of 2017." Compl. ¶ 45.

---

[3] Plaintiffs do not quote the deed of trust directly, but state that the deed of trust signed by the parties is a standard deed of trust, and a standard deed of trust contains the quoted language. ECF No. 11 at 3. The deed of trust does include this language. ECF No. 7-2 at 7.

7

Section 1024.38 requires a loan servicer to "maintain policies and procedures that are reasonably designed to achieve the objectives set forth in paragraph (b) of this section." 12 C.F.R. § 1024.38(a).[4] Paragraph (b) provides a list of objectives aimed at ensuring servicers will furnish timely and accurate information to borrowers. *See id.* § 1024.38(b).

As RoundPoint correctly notes, section 1024.38 provides no explicit enforcement right to a borrower. ECF No. 7 at 8–9; *see Neto v. Rushmore Loan Mgmt. Servs.*, No. DKC 16-1056, 2017 WL 896890, at *16 n.5 (D. Md. Mar. 7, 2017) (finding no private cause of action available under section 1024.38); *Agomuoh v. PNC Fin. Servs. Grp.*, No. GJH-16-1939, 2017 WL 657428, at *10 (D. Md. Feb. 16, 2017) (gathering cases finding the same). Plaintiffs did not address this claim in their opposition to the partial motion to dismiss. *See* ECF No. 11. Because section 1024.38 of Regulation X does not provide a private cause of action, the Court should FIND that plaintiffs have failed to state a claim under section 1024.38, GRANT RoundPoint's motion, and DISMISS plaintiffs' claim that RoundPoint violated section 1024.38 of RESPA Regulation X, 12 C.F.R. § 1024.38.

2. **Section 1024.41**

Plaintiffs allege that RoundPoint violated 12 C.F.R. § 1024.41 by "fail[ing] to accurately respond to Plaintiffs' loan modification application filed in March of 2017." Compl. ¶ 47. Plaintiffs assert they "submitted a completed . . . loan modification application in March of 2017," but RoundPoint proceeded with the scheduled foreclosure sale on May 2, 2017, in violation of section 1024.41. *Id.* ¶¶ 49–51.

Section 1024.41 sets forth loss mitigation procedures. Under 12 C.F.R. § 1024.41(g),

---

[4] Title 12, Code of Federal Regulations, section 1024 was amended effective October 19, 2017. This report and recommendation relies on the version that was effective January 10, 2014 to October 18, 2017.

8

"[i]f a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless" certain requirements are met. 12 C.F.R. § 1024.41(g).[5] A complete application means "an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." 12 C.F.R. § 1024.41(b)(1).

Also pertinent to this motion is the distinction between a complete application, a "facially complete" application, and an incomplete application. Section 1024.41(b)(2)(i)(B) requires the servicer to notify the borrower in writing, within five days of receiving a loss mitigation application, that the application has been received and indicating whether the application is complete or incomplete. If incomplete, the notice must state the additional documents necessary to make the application complete, and include a reasonable date by which the borrower should submit the documents. 12 C.F.R. § 1024.41(b)(2)(i)(B), (b)(2)(ii). A loss mitigation application "shall be considered facially complete when a borrower submits all the missing documents and information as stated in the notice required under paragraph (b)(2)(i)(B)." 12 C.F.R. § 1024.41(c)(2)(iv). If the servicer later determines additional documents are needed, the servicer must request the additional documents promptly, and treat the application as complete

---

[5] In the complaint, plaintiffs cite section 1024.41 generally and reference section 1024.41(c)(1), which requires a servicer, upon receipt of "a complete loss mitigation application more than 37 days before a foreclosure sale," to evaluate the borrower for all loss mitigation options available to him and provide notice to the borrower of its determination. *See* 12 C.F.R. § 1024.41(c)(1). However, in their opposition, plaintiffs assert RoundPoint breached 12 C.F.R. § 1024.41(g) when it "referred the loan to foreclosure while it was under review for loss mitigation." ECF No. 11 at 4. Because plaintiffs referenced section 1024.41 generally in their complaint, the Court will address section 1024.41(g).

until the borrower is given a reasonable opportunity to complete the application. *Id.*

Unlike section 1024.38, section 1024.41 does allow a borrower to "enforce the provisions of th[e] section pursuant to section 6(f) of" RESPA, 12 U.S.C. § 2605(f).[6] *Brown v. Bank of New York Mellon*, No. 1:16cv194, 2016 WL 2726645, at *2 (E.D. Va. May 9, 2016); *see also Combs v. U.S. Bank Nat'l Ass'n for JP ALT 2006-SI*, No. 1:17cv545, 2017 WL 2805494, at *2 (E.D. Va. June 28, 2017), *appeal docketed*, No. 17-1891 (4th Cir. Aug. 1, 2017).

Here, the foreclosure sale was held on May 2, 2017. Compl. ¶ 19. Thirty-seven days before May 2, 2017 is March 26, 2017. Accordingly, the Court must determine whether plaintiffs have alleged that their loss mitigation application was complete, or facially complete, by March 26, 2017.

According to the complaint, plaintiffs "began sending in paperwork to participate in a loan modification review" in February 2017. *Id.* ¶ 10. On February 6, 2017, RoundPoint requested additional information (a 4506-T form, bank statements, paystubs, and a doctor's certificate), and plaintiffs faxed the requested documents to RoundPoint on March 2, 2017. *Id.* ¶¶ 11–12. Therefore, plaintiffs' application was facially complete prior to March 26, 2017, and RoundPoint should have discontinued foreclosure proceedings.

RoundPoint argues that, "because [they] continued to request documents and information from Plaintiffs, Plaintiffs did not submit a complete or facially complete application within the requisite time." ECF No. 12 at 7. This argument is not persuasive. Under section 1024.41(c)(2)(iv), if plaintiffs timely provided the documents requested in RoundPoint's

---

[6] Title 12, United States Code, section 2605(f) provides, "[w]hoever fails to comply with any provision of this section shall be liable to the borrower for" actual damages (in the case of an action by an individual), additional damages if there has been "a pattern or practice of noncompliance," costs, and attorneys' fees. 12 U.S.C. § 2605(f).

February 6, 2017 letter acknowledging receipt of the application, the application would be considered facially complete, even if RoundPoint later determined additional documents were necessary.

Plaintiffs allege that, on March 6, 2017, RoundPoint requested the same information requested in the February letter, with the exception of the doctor's certificate, and plaintiffs faxed all requested documents to RoundPoint on April 3, 2017. *Id.* ¶¶ 13–14. There is no reference to the period of time RoundPoint provided in the March 6 letter for plaintiffs to comply with the request. Drawing all reasonable inferences in favor of plaintiffs, *Kensington Volunteer Fire Dep't*, 684 F.3d at 467, the Court will infer that providing the documents less than one month after the request was reasonable.

According to the allegations in the complaint, plaintiffs' application was facially complete on March 2, 2017, over 37 days prior to the scheduled foreclosure on May 2, 2017. RoundPoint's subsequent request for additional documents would not convert the facially complete application to an incomplete application unless plaintiffs failed to timely provide the newly requested documents. 12 C.F.R. § 1024.41(c)(2)(iv). "A Rule 12(b)(6) motion tests the sufficiency of a complaint; it does not, however, resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (internal quotation marks omitted). Treating plaintiffs' factual statements as true, plaintiffs have stated a plausible claim that RoundPoint violated RESPA, 12 C.F.R. § 1024.41(g) by moving forward with foreclosure proceedings when a complete application had been submitted more than 37 days prior thereto.

## IV. <u>RECOMMENDATION</u>

For the forgoing reasons, the Court RECOMMENDS that RoundPoint's partial motion to dismiss, ECF No. 6, be GRANTED in part and DENIED in part. RoundPoint's motion to dismiss plaintiffs' claims for breach of contract and for violation of section 1024.38 of RESPA, 12 C.F.R. § 1024.38, should be GRANTED pursuant to Federal Rule of Civil Procedure 12(b)(6). RoundPoint's motion to dismiss plaintiffs' claim that RoundPoint violated section 1024.41 of RESPA, 12 C.F.R. § 1024.41, should be DENIED.

## V. <u>REVIEW PROCEDURE</u>

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court

based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

/s/
_____
Robert J. Krask
United States Magistrate Judge
Robert J. Krask
United States Magistrate Judge

Norfolk, Virginia
December 22, 2017

13