**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

STERLING L. JENNINGS, et al.,

        Plaintiffs,

v.                                      Action No.  2:17cv427

ROUNDPOINT MORTGAGE
SERVICING CORPORATION, et al.,

        Defendants.

## UNITED STATES MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

        Sterling L. Jennings and Deirdre D. Jennings ("plaintiffs") filed a complaint against defendants RoundPoint Mortgage Servicing Corporation's ("RoundPoint") and Equity Trustees, LLC, in the Circuit Court for the City of Suffolk on July 11, 2017, seeking rescission of the foreclosure sale, a declaratory judgment stating that the foreclosure sale is void and invalid, compensatory damages against RoundPoint in the amount of $50,000.00, and a stay of any unlawful detainer proceedings until the claims in the complaint are resolved. ECF No. 1-1. RoundPoint removed the case to this Court on August 11, 2017. ECF No. 1 at 1. On February 27, 2018, the Court granted in part RoundPoint's partial motion to dismiss, and dismissed plaintiffs' claims for breach of contract and for violation of section 1024.38 of the Real Estate Settlement Procedures Act ("RESPA"), 12 C.F.R. § 1024.38, pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 17.

        On August 31, 2018, RoundPoint filed a motion for summary judgment on the three remaining counts of plaintiffs' complaint and request for declaratory judgment, asserting there

are no genuine issues of material fact and it is entitled to judgment as a matter of law pursuant to

Federal Rule of Civil Procedure 56(a). ECF No. 42. RoundPoint filed a memorandum and

exhibits in support of the motion. ECF Nos. 43, 43-1–43-6. Plaintiffs filed an opposition to the

motion on September 12, 2018, to which RoundPoint replied. ECF Nos. 55, 58. An order of

reference assigned this motion to the undersigned. ECF No. 62. Pursuant to the provisions of 28

U.S.C. § 636(b)(1)(B) and (C), Rule 72(b) of the Federal Rules of Civil Procedure, and Local

Civil Rule 72, it is hereby recommended that RoundPoint's motion for summary judgment be

**GRANTED**.

## I. **UNDISPUTED FACTS**[1]

### A. The Loan

On June 10, 2015, plaintiffs obtained a loan from Movement Mortgage, LLC, in the

amount of $404,395.00, which was insured by the Federal Housing Administration.

RoundPoint's statement of undisputed material facts ("Stmt.") ¶ 1, ECF No. 43; Fink Aff. ¶¶ 5–

6, ECF No. 43-1;[2] Ex. 2 (RFA Nos. 1–2), ECF No. 43-2 at 4, 15–31. Plaintiffs executed a note

and deed of trust securing the loan with the real property and improvements located at 408

---

[1] These undisputed facts are outlined in RoundPoint's memorandum in support of its motion for summary judgment, and are supported by the exhibits attached to the memorandum, including the affidavit of Jared Fink and the documents attached to his affidavit. ECF Nos. 43, 43-1–43-6.

[2] Plaintiffs argue that the Fink affidavit "is facially defective because it was not taken under oath and the notary does not indicate that they administered the required oath." ECF No. 55 at 3 (citing *Orsi v. Kirkwood*, 999 F.2d 86, 91 (4th Cir. 1993)). After the amendment to Rule 56 of the Federal Rules of Civil Procedure in 2010, an affidavit used to support summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). *Orsi* was superseded by this amendment. *See Jones v. W. Tidewater Reg'l Jail*, 187 F. Supp. 3d 648, 653 (E.D. Va. 2016). The Fink affidavit complies with Rule 56(c)(4), and will be considered by the Court.

Quaker Ridge Court, Suffolk, Virginia 23435 (the "Property").  Stmt. ¶ 2; Fink Aff. ¶ 5; Ex. 2

(RFA Nos. 1–2), ECF No. 43-2 at 4, 15–31.  Servicing of the loan transferred to RoundPoint on

August 1, 2015.  Stmt. ¶ 4; Fink Aff. ¶ 7, Ex. A, ECF No. 43-1 at 10–22.  The rights and interest

in the deed of trust were assigned to RoundPoint on March 1, 2017.  Stmt. ¶ 4; Fink Aff. ¶ 7, Ex.

B, ECF No. 43-1 at 24–26.

**B.     The Default and Initiation of Foreclosure Proceedings**

After August 30, 2016, plaintiffs stopped submitting monthly mortgage payments.[3]  Stmt.

¶¶ 6–7; Fink Aff. ¶¶ 10–11.  On November 28, 2016, RoundPoint notified plaintiffs that the loan

was in default, and failure to cure the default of $6,290.64 by January 4, 2017, could result in the

initiation of foreclosure proceedings.   Fink Aff. ¶ 12, Ex. F, ECF No. 43-1 at 38–42.   On

December 1, 2016, RoundPoint sent plaintiffs a letter stating, "[t]he Federal Housing

Administration (FHA) requires mortgage servicers to attempt to schedule a face-to-face meeting

with Customers with past due accounts to discuss possible repayment options." Ex. 2 (RFA No.

32), ECF No. 43-2 at 6, 32–34; Fink Aff. ¶ 14, Ex. G, ECF No. 43-1 at 44–45.  The letter further

stated,

> If we do not hear from you, then we may send a representative to the property
> address listed above in an attempt to contact you.  Please contact us within 14
> calendar days of this letter to schedule the face-to-face meeting or to notify us that
> you are not interested in participating in a face-to-face meeting.

*Id.*  Plaintiff Deirdre Jennings acknowledged receiving the letter, and testified in her deposition

---

[3] After plaintiffs failed to timely pay the principal and interest payment due for July 1, 2016,
RoundPoint sent plaintiffs a letter on August 24, 2016, notifying plaintiffs that they were in
default and failure to cure the default may result in RoundPoint initiating foreclosure
proceedings.  Stmt. ¶¶ 5–6; Fink Aff. ¶ 9, Ex. C, ECF No. 43-1 at 28–30.
Plaintiffs cured the delinquencies by August 30, 2016.  Stmt. ¶ 6; Fink Aff. ¶ 10, Exs. D, E, ECF
No. 43-1 at 32–33, 35–36.

that she placed a telephone call to RoundPoint in response to the letter. Ex. 5 (Deirdre Todd[4]

Dep. Tr. at 52:11–53:17), ECF No. 43-5 at 9–10.[5]

On or about December 22, 2016, a RoundPoint agent and/or employee traveled to the

Property and met with the plaintiffs. Stmt. ¶ 9; Fink Aff. ¶ 16; Ex. 5 (Deidre Todd Dep. Tr. at

53:25–54:3, 91:10–13), ECF No. 43-5 at 10–11, 14.[6] Ms. Todd testified that she met with

someone from RoundPoint, and that the person informed her that "they were not going to take

our home." Ex. 5 (Deirdre Todd Dep. Tr. 53:25–54:11), ECF No. 43-5 at 10–11.

In a letter dated January 4, 2017, RoundPoint notified plaintiffs that the loan was in

default and failure to cure the default of $9,320.02 by February 10, 2017, could result in

RoundPoint's initiation of foreclosure proceedings. Fink Aff. ¶ 17, Ex. H, ECF No. 43-1 at 47–

49.

**C.    Plaintiffs' Loss Mitigation Submissions**

On February 2, 2017, plaintiffs submitted a 14-page loss mitigation application to

RoundPoint by facsimile, which included:  (1) a cover page; (2) a 5-page uniform borrower

assistance form that appears to have been signed by Sterling Jennings on February 1, 2017; (3) a

2-page 4506-T form that appears to have been signed by Sterling Jennings and Deirdre Jennings

---

[4] While the parties have not addressed the issue, the Court presumes Deirdre Dlanor Todd, who was deposed on July 10, 2018, is plaintiff Deirdre D. Jennings. *See* Compl., ECF No. 1-1 at 1; Todd Dep. Tr., ECF No. 43-5.

[5] RoundPoint asserts that plaintiffs failed to respond to RoundPoint's December 1, 2016 letter. Stmt. ¶ 8; Fink Aff. ¶ 15. Without citing to the record, plaintiffs' state in their opposition to the motion for summary judgment, "Plaintiffs did respond to RoundPoint's correspondence; and a face-to-face meeting did not occur." ECF No. 55 at 2.

[6] Roundpoint asserts that the purpose of the meeting was to discuss "loss mitigation options." Stmt. ¶ 9; Fink Aff. ¶ 16; Ex. 5 (Deirdre Todd Dep. Tr. at 53:25–54:3, 91:10–13), ECF No. 43-5 at 10–11. During Ms. Todd's deposition, counsel asked, "[d]id anyone from RoundPoint ever visit your property to discuss this face-to-face meeting with you?," to which Ms. Todd responded, "Yes." Ex. 5 (Deirdre Todd Dep. Tr. at 53:25–54:3), ECF No. 43-5 at 10–11.

on February 1, 2017; (4) a 5-page bank statement for Deirdre Jennings reflecting account information for one month; and (5) a 1-page invoice from Bob White Landing Owners Association, Inc. Fink Aff. ¶ 18, Ex. I, ECF No. 43-1 at 53–66. In response, RoundPoint sent plaintiffs an "Incomplete Information Notice" on February 6, 2017, informing plaintiffs that their loss mitigation application was incomplete and requesting that the following documentation be submitted by February 16, 2017:

- a Request for Transcript of Tax Return (IRS Form 4506-T) for each borrower with the notation "(Please fill out line 5 (roundpoint address) and check appropriate box of 6 on the enclosed copy of 4506-T.)";

- a copy of the last two months of bank statements for all checking, savings, money market and/or brokerage accounts held by each borrower, with the following notation "(STERLING:  Please provide most recent 30 days Bank Statement for all bank accounts[.]  Please provide all pages even if blank.  Online banking printouts are not acceptable.)";

- doctor's certificate of illness/injury, medical bills, proof of monthly insurance benefits or government assistance, with the notation "(STERLING: Please provide Medical Bills or Doctor's Certificates as reason for your hardship is medical.)"; and

- a copy of the two most recent pay stubs showing year to date earnings with the notation, "(DEIRDRE:  Please provide most recent 30 days pay stubs that show year to date earnings.)."

Ex. 2 (RFA No. 40), ECF No. 43-2 at 7–8, 35–38; Fink Aff. ¶ 19, Ex. J, ECF No. 43-1 at 68–70.

On or around March 2, 2017, plaintiffs submitted a 16-page facsimile, consisting of: (1) a cover page, (2) bank statements for Deirdre Jennings reflecting three months, and comprising 14-pages; and (3) a 1-page form from Bon Secours Surgery Center at Virginia Beach providing information regarding Sterling Jenning's admission for shoulder surgery. Fink Aff. ¶ 20, Ex. K, ECF No. 43-1 at 72–87. RoundPoint sent plaintiffs an "Incomplete Information Notice" on March 6, 2017, informing plaintiffs that their application was incomplete and again requested:

- a Request for Transcript of Tax Return (IRS Form 4506-T) with the notation, "(Please fill out line 5 (roundpoint address) and check appropriate box of 6 on the enclosed copy of 4506-T.)";

- a copy of the last two months bank statements for all checking, savings, money market and/or brokerage accounts held by each borrower, with the following notation "(STERLING:  Please provide most recent 30 days Bank Statement for all bank accounts[.]  Please provide all pages even if blank.  Online banking printouts are not acceptable.)";

- a copy of the two most recent pay stubs showing year to date earnings with the notation, "(DEIRDRE:  Please provide most recent 30 days pay stubs that show year to date earnings.)."

Ex. 2 (RFA No. 44, ECF No. 43-2 at 9, 39–42); Fink Aff. ¶ 21, Ex. L, ECF No. 43-1 at 89–91.

On or around April 3, 2017, plaintiffs submitted a 12-page facsimile consisting of: (1) a cover page; (2) Deirdre Jennings' earnings statements reflecting pay periods beginning January 23, 2017, and ending March 26, 2017, with year-to-date earnings, comprising 7-pages; (3) the same Bon Secours form previously provided (though now the information was formatted on 2 pages); (4) a 1-page letter signed by Sterling Jennings indicating that he does not have a

checking or savings account with his wife Deirdre Jennings; and (5) the same 4506-T form signed on February 1, 2017 (without RoundPoint's address on line 5, although a box was checked on line 6). Fink Aff. ¶ 22, Ex. M, ECF No. 43-1 at 93–104. RoundPoint sent plaintiffs an "Incomplete Information Notice" on April 5, 2017, requesting:

- a Request for Transcript of Tax Return (IRS Form 4506-T) with the notation, "(Please fill out line 5 (roundpoint address) of IRS Form with most recent signed and dated, as available one is expired.)";

- a copy of the last two months of bank statements for all checking, savings, money market and/or brokerage accounts held by each borrower, with the following notation "(STERLING: Please place recent date on the enclosed copy of your explanation letter regarding bank.)."

Ex. 2 (RFA No. 48), ECF No. 43-2 at 10, 43–46; Fink Aff. ¶ 23, Ex. N, ECF No. 43-1 at 106–08. The notice further informed plaintiffs that a foreclosure sale had been scheduled for May 2, 2017, and "[i]f the requested information listed above is not received within 7 calendar days prior to the scheduled foreclosure sale date, your application file will be closed and the sale of your home will resume." *Id.*

On April 18, 2017, plaintiffs signed a 4506-T form titled "Request for Transcript of Tax Return," filled in RoundPoint's address in line 5, and checked the appropriate box in line 6; and the form was submitted to RoundPoint on April 19, 2017. Ex. 5 (Deirdre Todd Dep. Tr. 63:4–64:13), ECF No. 43-5 at 12–13; Ex. 6 (Sterling Jennings Dep. Tr. 65:2–17), ECF No. 43-6 at 9; Fink Aff. ¶ 24, Ex. O, ECF No. 43-1 at 111–12. Plaintiffs also submitted a letter signed by Sterling Jennings, and dated April 18, 2017, indicating that he does not have a checking or savings account with his wife. Fink Aff. ¶ 24, Ex. O, ECF No. 43-1 at 113. RoundPoint sent

7

plaintiffs a "Complete Application Acknowledgment" on April 20, 2017, stating that RoundPoint "will make every effort to expedite the review of your package prior to the scheduled foreclosure sale." Ex. 2 (RFA No. 51), ECF No. 43-2 at 11, 47–50; Fink Aff. ¶ 25, Ex. P, ECF No. 43-1 at 116–18.   The letter warned plaintiffs to, "[p]lease understand that a foreclosure sale postponement is not guaranteed." *Id.*

In an "Evaluation Report" letter dated April 26, 2017, RoundPoint informed plaintiffs that, based on a review of the information submitted, plaintiffs were not eligible for any borrower assistance programs. Ex. 2 (RFA No. 55), ECF No. 43-2 at 12, 52–58; Fink Aff. ¶ 26, Ex. Q, ECF No. 43-1 at 120–26. Plaintiffs generally were denied participation in the assistance programs due to the nature of their financial hardship, the level of their income, and the then-pending foreclosure sale. *Id.*

On May 1, 2017, one day prior to the foreclosure sale, plaintiffs submitted a facsimile to RoundPoint with a cover page titled "Appealing Denial for Loan Assistance," along with 27-pages of documents consisting mostly of those documents previously submitted by plaintiffs in response to RoundPoint's incomplete documentation notices. Fink Aff. ¶ 29, Ex. S, ECF No. 43-1 at 134–62.

On May 17, 2017, RoundPoint responded to plaintiffs, stating that the request to reconsider the April 26, 2017 evaluation summary was denied because plaintiffs' monthly income and expenses rendered them ineligible for loan modification, and also because they failed to submit their loss mitigation application more than 90 days prior to the scheduled foreclosure sale. Fink Aff. ¶ 30, Ex. T, ECF No. 43-1 at 165–74.

### D.   Foreclosure Sale

By April 26, 2017, plaintiffs had failed to cure the default specified in the January 4, 2017 notice, and the Loan had an outstanding balance of $414,040.38, comprised of principal in the amount of $396,058.68, accrued interest through April 25, 2017 in the amount of $10,326.49, escrow advances in the amount of $4,372.96, late charges in the amount of $927.52, and recoverable advances of $2,080.52.  Fink Aff. ¶ 27.

RoundPoint accelerated the amounts due under the note and deed of trust and appointed defendant Equity Trustees, LLC ("Equity"), to conduct a foreclosure sale of the Property.  Stmt. ¶ 13; Fink Aff. ¶ 28, Ex. R, ECF No. 43-1 at 128–32.  Equity conducted a foreclosure sale on May 2, 2017, and the Property was sold to RoundPoint for $418,772.49.  Stmt. ¶ 14; Fink Aff. Ex. R, ECF No. 43-1 at 128–32.

## II.   STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure permits a party to move for summary judgment and directs a Court to grant such motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party "seeking summary judgment always bears the initial responsibility of informing the [court] of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotations omitted).  Subsequently, the burden shifts to the non-moving party to present specific facts demonstrating that a genuine dispute of material fact exists for trial.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do

more than simply show that there is some metaphysical doubt as to the material facts."). For the evidence to present a "genuine" dispute of material fact, it must be "such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When deciding a motion for summary judgment, the Court must view the facts, and inferences to be drawn from the facts, in the light most favorable to the non-moving party. *Id.* at 255.

> Rule 56 provides that a
>
> party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the Court has discretion to "consider the fact undisputed for purposes of the motion" and to "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e). Further, as specified in Rule 56(B) of the Local Civil Rules for the Eastern District of Virginia, "the Court may assume that facts identified by the moving party in its listing of [undisputed] material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." E.D. Va. Loc. Civ. R. 56(B).

10

## III.   ANALYSIS

Three claims remain in plaintiffs' complaint against RoundPoint:  (1) RoundPoint did not conduct a face-to-face meeting prior to foreclosing on the property in violation of Federal Housing Administration ("FHA") regulations, 24 C.F.R. § 203.604;[7] (2) RoundPoint violated Regulation X of RESPA, specifically 12 C.F.R. § 1024.41, by failing to accurately respond to plaintiffs' loan modification application; and (3) plaintiffs are entitled to the equitable remedy of rescission.  Compl., ECF No. 1-1.  RoundPoint asserts there are no genuine issues of material fact, and seeks judgment as a matter of law against plaintiffs on all remaining counts of the complaint. ECF Nos. 42, 43.  RoundPoint complied with Local Civil Rule 56(B) by providing a list of all material facts, which it contends are not genuinely disputed, and has cited extensively to the record relied upon to support the list of facts.  Id.  In response, plaintiffs list the following facts as being in dispute:

- Plaintiffs did respond to RoundPoint's correspondence; and a face-to-face meeting did not occur.

- RoundPoint reviewed the February 2, 2017 application and notified Plaintiffs of missing or incomplete documents.  At that time, Plaintiffs conten[d] that the application was facially complete[.]  If the application was facially complete then RoundPoint was required to halt all foreclosure activity as required by Section 1024.41(g) of Regulation X.

- Plaintiffs submitted their missing documents in a timely fashion for review, and the foreclosure sale should never have been scheduled.

ECF No. 55 at 2.  Plaintiffs provide no citations to "the parts of the record relied on to support the facts alleged to be in dispute," as required by Local Civil Rule 56(B).  In fact, plaintiffs make

---

[7] In the complaint, plaintiffs also reference "section 248 of the National Housing Act" when discussing the requirement of a face-to-face meeting. Compl. ¶ 23, ECF No. 1-1 at 6.  This section of the National Housing Act, codified at 12 U.S.C. § 1715z-13, addresses insured mortgages made to Native Americans to build on Indian reservations, and does not appear to apply to plaintiffs' mortgage.

11

only two citations in their opposition to any evidence. ECF No. 55 at 4. Plaintiffs state that RP

JENNINGS 000236–248 and RP JENNINGS 000249–259 (documents plaintiffs sent to

RoundPoint in response to incomplete information notices)[8] prove there is a dispute regarding

when their application was facially complete. *Id.* These documents do not create an issue of

genuine fact.

A.   **Face-to-Face Meeting**

It is undisputed that the loan plaintiffs obtained in June 2015 was insured by the FHA.

Fink Aff. ¶¶ 6–7; Ex. 2 (RFA Nos. 1–2), ECF No. 43-2 at 4, 15–31. In exchange for obtaining a

loan insured by the FHA, a part of the Department of Housing and Urban Development

("HUD"), a lending institution cannot commence foreclosure on a property secured by an FHA

loan until certain conditions precedent have been met. *Parris v. PNC Mortg.*, No. 2:14cv142,

2014 WL 3735531, at *5 (E.D. Va. July 28, 2014) (citing 24 C.F.R. § 203.500).   One such

condition is "[t]he mortgagee must have a face-to-face interview with the mortgagor, or make a

reasonable effort to arrange such a meeting, before three full monthly installments due on the

mortgage are unpaid." 24 C.F.R. § 203.604(b). The regulation defines "reasonable effort" as "a

minimum of one letter sent to the mortgagor certified by the Postal Service as having been

dispatched," and "at least one trip to see the mortgagor at the mortgaged property, unless the

mortgaged property is more than 200 miles from the mortgagee, its servicer, or a branch office of

either, or it is known that the mortgagor is not residing in the mortgaged property." 24 C.F.R.

---

[8] Plaintiffs do not provide the documents identified in their opposition by bates number;
however, RoundPoint has done so in its reply. ECF Nos. 55 at 4, 58-1, 58-2. A review of the
documents reveals them to be duplicates of documents attached to the affidavit of Jared Fink in
exhibits I (RP JENNINGS 000348–61), K (RP JENNINGS 000363–66, 377), and M (RP
JENNINGS 000382–85, 388–89).

§ 203.604(d).  The face-to-face meeting is not required if "the property is not within 200 miles of the mortgagee, its servicer, or a branch office of either."  24 C.F.R. § 203.604(c)(2).

Plaintiffs assert in their complaint "[t]here was no face-to face meeting between Plaintiffs and [RoundPoint] and there was no reasonable attempts made in order to arrange such meeting." Compl. ¶ 25, ECF No. 1-1 at 6.  In their opposition to summary judgment, plaintiffs reiterate, "Plaintiffs did respond to RoundPoint's correspondence; and a face-to-face meeting did not occur." ECF No. 55 at 2.  As discussed above, plaintiffs fail to cite to any record evidence in support of the statement made in their opposition brief in violation of Rule 56(e) and Local Civil Rule 56(B).  In addition, plaintiffs failed to swear to the contents of the complaint under penalty of perjury, and therefore the assertions made in the complaint do not constitute admissible evidence. *See Jones*, 187 F. Supp. 3d at 653 (citing *United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004)).

RoundPoint argues the regulations do not require that it conduct a face-to-face meeting with plaintiffs before foreclosure due to the location of the Property.  RoundPoint states, "Plaintiffs do not claim RoundPoint is located within Virginia or even within 200 miles of the Property," because "RoundPoint is not located within 200 miles of the Property and does not maintain a branch within 200 miles of the Property." ECF No. 43 at 13 (citing Compl. and Fink Aff. ¶ 3).  Fink affirmed that "RoundPoint is a mortgage servicing corporation with offices in Dallas, Texas; Charlotte, North Carolina; and Mesa, Arizona.  It does not maintain any branches or offices in the Commonwealth of Virginia." Fink Aff. ¶ 3.  Plaintiff does not dispute RoundPoint's assertion that it does not maintain a branch within 200 miles of the Property. Accordingly, RoundPoint is exempt from the requirement of a face-to-face meeting with plaintiffs pursuant to 24 C.F.R. § 203.604(c)(2), and RoundPoint's motion for summary

judgment on this count of plaintiffs' complaint should be **GRANTED**.[9]

**B.     RESPA Regulation X**

Next, plaintiffs allege RoundPoint violated RESPA's Regulation X, specifically 12 C.F.R. § 1024.41, by "fail[ing] to accurately respond to Plaintiffs' loan modification application filed in March of 2017." Compl. ¶ 47, ECF No. 1-1 at 8.

Under 12 C.F.R. § 1024.41(g), "[i]f a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless" certain requirements are met. 12 C.F.R. § 1024.41(g). A complete application means "an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." 12 C.F.R. § 1024.41(b)(1).

It is important to note the distinction between a complete application, a "facially complete" application, and an incomplete application. Section 1024.41(b)(2)(i)(B) requires the servicer to notify the borrower in writing, within five days of receiving a loss mitigation application, that the application has been received and indicating whether the application is complete or incomplete. If incomplete, the notice must state the additional documents necessary to make the application complete, and include a reasonable date by which the borrower should submit the documents. 12 C.F.R. § 1024.41(b)(2)(i)(B), (b)(2)(ii). A loss mitigation application

---

[9] RoundPoint further argues that, even though they were not required to hold a face-to-face meeting under the regulation, they did in fact hold such a meeting. ECF No. 43 at 13–14. Because the meeting was not required under the regulation, due to the location of the Property, it is not necessary to determine whether RoundPoint held, or made a reasonable effort to hold, a meeting with plaintiffs prior to the foreclosure in compliance with the regulation.

"shall be considered facially complete when a borrower submits all the missing documents and information as stated in the notice required under paragraph (b)(2)(i)(B)."   12 C.F.R. § 1024.41(c)(2)(iv).   If the servicer later determines additional documents are needed, the servicer must request the additional documents promptly, and treat the application as complete until the borrower is given a reasonable opportunity to complete the application.  *Id.*

Here, the foreclosure sale was held on May 2, 2017.  Thirty-seven days before May 2, 2017 is March 26, 2017.  Accordingly, the Court must determine whether plaintiffs' loss mitigation application was complete, or facially complete, by March 26, 2017.

In opposition to RoundPoint's motion for summary judgment, plaintiffs argue that their application submitted February 2, 2017, was "facially complete" when RoundPoint reviewed the application and notified plaintiffs of missing or incomplete documents.  ECF No. 55 at 2.  Plaintiffs further argue that the foreclosure sale should not have been scheduled because plaintiffs "submitted their missing documents in a timely fashion for review."  *Id.*  Plaintiffs reference RP JENNINGS 000236–248 and RP JENNINGS 000249–259, stating that these documents prove there is a dispute regarding whether their application was facially complete.  *Id.* at 4.  These bates numbers reference some of the documents plaintiffs sent to RoundPoint by facsimile in response to the incomplete information notices.

The undisputed facts show that plaintiffs faxed a loss mitigation application to RoundPoint on February 2, 2017.  Because the application was not complete, RoundPoint sent plaintiffs an incomplete information notice within five days of receiving the application, on February 6, 2017, informing plaintiffs of the additional documentation that must be submitted by February 16, 2017, to complete their application.

15

On March 2, 2017, plaintiffs faxed additional documents to RoundPoint. These documents, however, did not include all documents requested in the incomplete information notice. Specifically, plaintiffs failed to complete the IRS Form 4506-T by putting RoundPoint's address on line 5, and checking the appropriate box on line 6, as directed in the incomplete information notice sent February 6, 2017; failed to provide medical bills or a doctor's certificate regarding Sterling Jennings' medical condition; and failed to provide Deirdre Jennings' pay stubs for the previous thirty days showing year-to-date earnings. Because plaintiffs failed to submit the documents requested in the incomplete information notice, their application remained incomplete, and was not "facially incomplete" as argued by plaintiffs. A loss mitigation application "shall be considered facially complete when a borrower submits *all the missing documents and information as stated in the notice* required under paragraph (b)(2)(i)(B)." 12 C.F.R. § 1024.41(c)(2)(iv) (emphasis added).

Plaintiffs next sent documentation to RoundPoint by facsimile on April 3, 2017, which was within 37 days of the foreclosure sale. Plaintiffs still failed to provide the documents requested in the first incomplete information notice. In fact, plaintiffs failed to provide the documents requested in the first incomplete information notice until April 19, 2017.

The undisputed facts show plaintiffs did not submit a complete loss mitigation application to RoundPoint "more than 37 days before a foreclosure sale." *See* 12 C.F.R. § 1024.41(g). Accordingly, RoundPoint complied with the requirements of 12 C.F.R. § 1024.41(g), RESPA's Regulation X, by appropriately responding to plaintiffs' loss mitigation application, and did not violate the regulation when it foreclosed on the Property. RoundPoint's motion for summary judgment on this count should be **GRANTED**.

## C.    Rescission

Last, plaintiffs seek a rescission of the foreclosure sale to "return the Plaintiffs to the position they were in before the improperly held foreclosure sale was conducted." Compl. ¶ 53, ECF No. 1-1 at 8.   While Virginia law allows courts to equitably set aside a foreclosure sale under certain circumstances, such equitable relief "calls for the highest and most drastic exercise of the power of a court of chancery-to annul and set at naught the solemn contracts of parties." *Wilkins v. Wells Fargo Bank, N.A.*, No. 2:15cv566, 2016 WL 6775692, at *5–6 (E.D. Va. Nov. 15, 2016) (quoting *Bonsal v. Camp*, 69 S.E. 978, 979 (Va. 1911)).   In order to justify rescission of the foreclosure sale, plaintiffs must:

> (1) identify with specificity the precise requirements in the deed of trust that he or she asserts constitute conditions precedent to foreclosure, (2) allege facts indicating that the trustee failed to substantially comply with them so that the power to foreclose did not accrue, and (3) allege that the foreclosure purchaser knew or should have known of the defect.

*Id.* at *6 (citing *Parrish v. Fed. Nat'l Mortgage Ass'n*, 787 S.E.2d 116, 131 n.5 (Va. 2016); *Squire v. Va. Hous. Dev. Auth.*, 758 S.E.2d 55, 60–61 (Va. 2014)).

Plaintiffs have failed to show any of the elements necessary to justify the drastic remedy of rescission, and RoundPoint's motion for summary judgment on this count should be **GRANTED**.

## IV.    RECOMMENDATION

For the forgoing reasons, the Court **RECOMMENDS** that RoundPoint's motion for summary judgment, ECF No. 42, be **GRANTED**.

## V.     REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.  Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail.  A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof.  *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

/s/

Robert J. Krask
United States Magistrate Judge

Robert J.  Krask
United States Magistrate Judge

Norfolk, Virginia
October 10, 2018

18